## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Joel D. Mead, | Civil No. 13-99 (DWF/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| American National Insurance Co., | |
| Defendant. | |

John H. Faricy, Jr., Esq., and Vadim Trifel, Esq., Faricy Law Firm, PA, counsel for Plaintiff.

Molly R. Hamilton, Esq., and Terrance J. Wagener, Esq., Messerli & Kramer P.A, counsel for Defendant.

## INTRODUCTION

This matter is before the Court on cross-motions for summary judgment brought by Plaintiff Joel D. Mead ("Plaintiff") (Doc. No. 32) and Defendant American National Insurance Co. ("Defendant") (Doc. No. 26). For the reasons set forth below, the Court denies both motions.

## BACKGROUND

In this action, Plaintiff seeks to recover proceeds as a beneficiary to a life insurance policy (the "Policy") issued by Defendant to Plaintiff's wife, Myrtle Mead ("Mrs. Mead"). (*See generally* Doc. No. 1, Ex. 1 ("Compl.").)

On September 15, 2010, Mrs. Mead filled out and submitted an on-line application for life insurance with Defendant. (Doc. No. 30 ("Turner Aff.") ¶ 2 at 00309; Compl. ¶ 8, Ex. A.) The application consisted of five questions regarding Mrs. Mead's health, including the following question, to which Mrs. Mead answered "No":

> 2.   Within the past 10 years, have you been diagnosed, treated, tested positive for, been given medical advice by a member of the medical profession for: heart or circulatory system disease, blood or immune system disease (excluding a positive HIV test), cancer (excluding basal and squamous cell skin cancer); kidney, liver, pancreas, or lung disease (excluding asthma or bronchitis); alcoholism or alcohol or drug abuse; stroke; TIA; Alzheimer's or hospitalized for any mental or nervous system disorder; or have you attempted suicide?

(Compl. ¶ 9, Ex. A.)

On September 15, 2010, Defendant issued the Policy, with a face amount of $100,000, and Plaintiff was identified as the sole beneficiary to the Policy's proceeds. (Turner Aff. ¶ 2 at 00306.) Mrs. Mead paid all of her premiums under the Policy. (Compl. ¶ 3; Doc. No. 3 ("Answer & Countercl.") ¶ 3.)

On September 21, 2010, Mead visited a healthcare clinic and a healthcare provider made the following notes:

> SUBJECTIVE: A 48-year old new to our clinic who comes in with a couple concerns. 1. She has noticed a mass in her left buttocks which she says has been present for several months. She states it is extremely painful. She did not get evaluated previously because she did not have any health insurance until she recently married her husband. She states that the mass is associated with quite a bit of pain. On a scale of 1-10, she rates the pain as an 8 or 9 in severity. Pain is worse if she is sitting down. She admits she has been taking prescription drugs illegally from dealers she knows. . . .

(Turner Aff. ¶ 2 at 00264.)

2

On May 24, 2011, Mrs. Mead died from metastatic lung cancer.  (*Id*. at 00308.) On June 6, 2011, Plaintiff requested payment of life insurance proceeds from Defendant. (*Id*. at 00087-88.)  In a letter dated October 26, 2011, Defendant acknowledged the receipt of Plaintiff's claim for benefits, but stated that payment could not be approved:

> Enclosed you will find medical records showing emergency treatment for alcohol intoxication.  Medical records also note Ms. Mead reported a history of crack cocaine use.  It was further noted that she was scheduled to go to Chrysalis for evaluation and chemical dependency treatment.
>
> Had the Company been given the correct information on the application the policy would not have been issued. . . .

(*Id*. at 00306.)

The medical records Defendant referenced include documentation of treatment Mrs. Mead received at North Memorial Medical Center on July 20, 2006 (the "July 2006 Chart Notes"):

> EMERGENCY ROOM REPORT:
>
> CHIEF COMPLAINT:  This is a 44 year-old who presents with alcohol intoxication.
>
> HISTORY OF PRESENT ILLNESS:  The patient was sober for about five years until 2000 when the patient started doing crack cocaine with the boyfriend and then the alcohol.  The patient has been having problems since that time.  She said that she met a boyfriend at the time who started her on crack cocaine.  She is now with a different boyfriend.  She was doing crack cocaine about two days ago and has been drinking a pint a day.  She is scheduled to go to Chrysalis for evaluation for chemical dependency treatment again for her sixth time.  Tonight the patient called her daughter and there is a question of whether or not she actually told her daughter she was going to take a bunch of pills or not.  The daughter called 911 and she was brought in here.  The patient says she does have a history of suicide attempt about 10 to 12 years ago with some Prozac but she hasn't done anything since that time.  She did go to school and become a CD counselor prior to falling back into drugs and alcohol.  She denies any financial

3

> difficulties. She says she works as a paralegal as a legal secretary on the internet transcribing legal documents. She says she is always broke because they are always doing crack cocaine, but otherwise has no financial problems.
>
> EMERGENCY DEPARTMENT COURSE: The patient was seen and examined. She had a blood alcohol of 0.264. Her urine tox was positive for cocaine. The patient was here. We are just waiting for her labs to come back and have psychiatric social services see her. The patient started fighting and swearing at me saying that I didn't know what I was doing. The patient got Droperidol 5IM. She now is awake. She is sober. She has been observed here in the ER for approximately five hours and is feeling much better. Her original blood alcohol was 0.264. She now has a sober ride. She will be allowed to go home.
>
> DIAGNOSIS:
> 1.   Alcohol intoxication.
> 2.   Suicidal ideation. She denies any suicidal thoughts at this time. She says she might have said something to her daughter. . . .

(*Id.* at 00310-11.)

While the July 2006 Chart Notes state that Mrs. Mead was "scheduled to go to Chrysalis for evaluation for chemical dependency treatment again for her sixth time," Plaintiff has submitted a letter from Chrysalis dated August 15, 2013, wherein the Records Custodian states that no records for Mrs. Mead could be found. (Doc. No. 34 ("Trifel Aff.") ¶ 6, Ex. E.) The Records Custodian explains that Chrysalis keeps physical files for seven calendar years after the last contact with a client, and details its systems to check on past records where physical files are no longer available. (*Id.*) Further, Mrs. Mead's husband testified that he had never observed Mrs. Mead attending chemical dependency treatment at Chrysalis, and Mrs. Mead's daughter testified that she did not know if her mother had ever obtained treatment or counseling for drug use or alcohol use. (Trifel Aff. ¶ 7, Ex. F ("J. Mead Dep.") at 32; *id.* ¶ 8, Ex. G ("Dehncke Dep.") at 14-15.)

4

Defendant asserts that Mrs. Mead's health history would have affected the underwriting. Defendant's Chief Underwriter for Special Markets, Michael Monroe ("Monroe"), explained:

> If all questions on the application dated September 15, 2010 had been answered accurately, then the application would have been declined. Here are the specifics:
> Application question 2 asks if "within the past 10 years, have you been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for: . . . alcoholism or alcohol or drug abuse . . . ? This was answered NO.
> However, ER records from North Memorial Robbinsdale Hosp. in Robbinsdale, MN dated July 30, 2006 reveal an emergency admission for alcohol intoxication. Records state "she was doing crack cocaine about two days ago and has been drinking a pint a day. She is scheduled to go to Chrysalis for evaluation for chemical dependency treatment again for her sixth time."

(Turner Aff. ¶ 2 at 00267.) Monroe also testified that "application question 2" was designed such that American National would decline issuance of a Policy if it were answered "Yes." (Doc. No. 29 ("Wagener Aff.") ¶ 2, Ex. A at 34.) Monroe further testified that, under certain circumstances, Defendant may issue a life insurance policy to someone with a prior history of drug or alcohol use, but with a higher premium. (*Id.* at 50.)

On December 13, 2012, Plaintiff filed this action in state court. (Compl.) Defendant removed the case to this Court on January 10, 2013. (Doc. No. 1.) Plaintiff asserts the following three counts against Defendant: (1) Declaratory Relief—Duty to Provide Coverage; (2) Breach of Contract; and (3) Breach of Implied Covenant of Good Faith and Fair Dealing. (Compl. ¶¶ 18-28.) Defendant filed the following counterclaims:

5

(1) Declaratory Judgment; (2) Rescission for Misrepresentation; and (3) Rescission for Failure of a Condition Precedent.  (Answer & Countercl. ¶¶ 1-16.)

The parties both move for summary judgment.  Defendant argues that it is entitled to summary judgment on its affirmative defense and counterclaim for rescission of the Policy due to Mrs. Mead's alleged misrepresentations in the policy application.  Plaintiff argues that Defendant has not met its burden of establishing that Mrs. Mead made an intentional or willful misrepresentation when she applied for the Policy and that Defendant has improperly denied benefits to Plaintiff.  In his motion, Plaintiff contends that Defendant should be ordered to provide him life insurance benefits as Mrs. Mead's beneficiary under the Policy.

## DISCUSSION

### I.  Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The burden to prove fraud and materiality is on the insurer. *Adzick v. UNUM Life Ins. Co. of Am.*, Civ. No. 99-808, 2001 WL 1318420, at *4 (D. Minn. Oct. 9, 2001).

## II.    Rescission of the Policy

Defendant seeks rescission of the Policy, and Plaintiff asserts Defendant has improperly denied him benefits.

Minn. Stat. § 61A.11 provides:

> In any claim upon a policy issued in this state without previous medical examination, or without the knowledge or consent of the insured, or, in case of a minor, without the consent of a parent, guardian, or other person having legal custody, the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, unless willfully false or intentionally misleading.

Minn. Stat. § 61A.11. Under this statute, an insurer has the option to void an insurance contract once it discovers that an insured has wilfully made a false representation that is material and increases the contractual risk undertaken by the insurer. *Howard v. Aid*

*Ass'n for Lutherans*, 272 N.W.2d 910, 912 (Minn. 1978) (citing Minn. Stat. § 61A.11); *Ellis v. Great-West Life Assurance Co.*, 43 F.3d 382, 386 (8th Cir. 1994).

In Minnesota, courts do not require proof of "intent to deceive." *See Ellis*, 43 F.3d at 387. When an application requests the disclosure of specific information, willfulness depends on: (1) whether the insured had full knowledge of the concealed facts; and (2) whether the concealed facts probably would have precluded issuance of the policy if known to the insurance company. *LeBus v. Nw. Mut. Life Ins. Co.*, 55 F.3d 1374, 1377 (8th Cir. 1995) (citing *Ellis*, 43 F.3d at 387).

Defendant argues that Mrs. Mead had full knowledge of her medical conditions, diagnosis, treatment, and testing when she filled out the Policy application. For example, Defendant submits that the July 2006 Chart Notes demonstrate that Mrs. Mead was treated, tested positive for, or was diagnosed with "alcohol and/or drug abuse." In addition, Defendant contends that the July 2006 Chart Notes reflecting that Mrs. Mead was scheduled for chemical dependency treatment at Chrysalis for the sixth time demonstrates Mrs. Mead's appreciation of the severity of her drug and alcohol use. Based on this, Defendant argues that it has established a misrepresentation by Mrs. Mead as a matter of law. In addition, Defendant argues that no issues of material fact with respect to the materiality of the misrepresentation exist. In particular, Defendant maintains that had Mrs. Mead responded in the affirmative to question 2, Defendant would not have issued the Policy.

Plaintiff argues that, as a matter of law, the answers on Mrs. Mead's application were not wilfully false or intentionally misleading. Plaintiff points out that Defendant

8

simply did not ask specific questions that would have elicited information about the *use* of alcohol or drugs; and instead, Defendant asked a question about *alcoholism* or alcohol or drug *abuse*. Plaintiff maintains that Mrs. Mead answered correctly when asked if she had, within the last ten years, been "diagnosed, treated, tested positive for, or been given medical advice" for "alcoholism or alcohol or drug abuse." In support, Plaintiff points out that during her July 2006 visit to North Memorial, Mrs. Mead was diagnosed with "alcohol intoxication" *not* alcoholism or alcohol or drug abuse.

The Court concludes that neither party is entitled to summary judgment because material fact issues exist. There is no dispute that Mrs. Mead answered "no" when asked whether she had "[w]ithin the past 10 years" been "diagnosed, treated, tested positive for, or given medical advice" for "alcoholism or alcohol or drug abuse." There is also no dispute that Mrs. Mead was treated at North Memorial Medical Center in July 2006, at which time Mrs. Mead tested positive for cocaine, had a blood-alcohol level of .264, and made statements about drug and alcohol use. For example, the July 2006 Chart Notes indicate that Mrs. Mead "was doing crack cocaine about two days ago and has been drinking a pint a day." (Turner Aff. ¶ 2 at 00310-11.) While this evidence could lead a reasonable juror to conclude that Mrs. Mead did, in fact, abuse drugs or alcohol, and that she was treated or given medical advice about that abuse, the information does not necessarily lead to that conclusion. The resulting diagnosis in July 2006 was "alcohol intoxication," not alcoholism. Moreover, while the July 2006 Chart Notes clearly indicate alcohol and drug *use*, the evidence does not necessarily demonstrate alcohol or drug *abuse*. A reasonable juror could also find, based on the evidence in the record, that

9

Mrs. Mead was simply treated for the use of alcohol and cocaine. The reasonableness of this finding would be supported by the fact that, despite the notation that Mrs. Mead was "scheduled to go to Chrysalis for evaluation for chemical dependency treatment again for her sixth time," the evidence indicates that Chrysalis has no record of treating Mrs. Mead and deposition testimony does not confirm past treatment.

Importantly, the Court notes that Defendant did not question Mrs. Mead about receiving medical treatment for alcohol intoxication or for alcohol or drug use. Nor did Defendant ask Mrs. Mead about the frequency or extent of her use of drugs or alcohol. The content of Defendant's application question is important because should the jury conclude that Mrs. Mead was treated for alcohol and drug use, and not abuse, then the non-specific nature of the question would preclude Defendant's counterclaim for rescission.

Because the Court finds that material issues of fact exist—namely, the questions of whether or not the evidence demonstrates that Mrs. Mead received treatment or medical advice for drug or alcohol abuse and whether she misrepresented that information in her application—the Court denies the pending motions for summary judgment.

**ORDER**

Based on the record, files, and proceedings herein, and for the reasons discussed above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. [32]) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Doc. No. [26]) is **DENIED**.

Dated: July 17, 2014                         s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge